THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY

*v.*

JOHN GOEBEL.

*Filed at Ottawa January 25, 1887.*

1. NEGLIGENCE—*contributory and comparative—collision with freight car while being unloaded on side-track—injury to person engaged in unloading the freight car.* Where a recovery is sought against a railway company for the killing of a person while engaged in unloading coal from a freight car left on a side-track for the purpose of being unloaded, by violently running other cars against the same without previous warning, on the ground the company had so acted as to justify the deceased in assuming there was no danger in being upon the freight car, and to throw him off his guard and excuse his want of care, there is no error in refusing an instruction which virtually would take this feature of the case from the jury.

2. In such case it would be error for the court, at the instance of the defendant, to instruct the jury, as a matter of law, that if they believed, from the evidence, that the employes of the defendant, shortly before the accident, saw the deceased upon the car at the place where the injury occurred, yet, as a matter of law, they had a right to presume that he was a reasonable being, and would not place himself or remain in a position of danger, until they saw something in his conduct to the contrary.

3. The rule that where those in charge of a train of cars see a person crossing the track, or approaching other places of known danger, they may rightfully presume he will look out for danger and avoid it, and therefore not attempt to stop the train, has no application where the person injured has reasonable ground to suppose there is no danger in the position in which he is rightfully engaged, in unloading a car upon a side-track, such confidence in his safety being induced by the previous conduct of the company, and whereby he is thrown off his guard and lulled into a sense of security, and is injured by the sudden striking of the car he is unloading.

4. No one has the right, by his course of dealing, or otherwise, to invite confidence, and lull another into a sense of security from the consequences of his own acts, and then, when an injury has resulted to him from simply acting upon the confidence thus inspired, to turn around and say he should have been on his guard and have paid no attention to what was said or done which caused him to believe he was in no danger.

5. Where a railway company places a loaded car upon a side-track, to be there unloaded by the owners of the freight, and such owners, or their servants, with the express or implied consent of the company, proceed to remove the freight, the company will have no right, without special notice and warning, to run or back a train in upon the side-track while such car is being unloaded. In such case, those engaged in unloading may give their undivided attention to their work, and will be justified in assuming that the company will not molest them, or render their position hazardous, without such notice or warning.

6. Pleading—*admission of sufficiency by pleading further.* The filing of the general issue in an action on the case, is an admission, in law, of the sufficiency of the several counts of the declaration.

7. Instruction—*construed—whether assuming a fact.* In an action by the personal representative of a deceased person, against a railway company, for negligence causing the death of the intestate, the court instructed the jury, "that although a plaintiff, who has been guilty of negligence, can recover, if the jury believe, from the evidence, that the defendant has been guilty of negligence which is gross, in comparison with that of the plaintiff, which is slight, yet," etc.: *Held,* that the words, "*which is slight,*" did not render the instruction subject to the objection that it told the jury the plaintiff's negligence was slight. The words, "a plaintiff who has been guilty," etc., can not be held to refer to the plaintiff in the suit. The purpose of the instruction was to state a hypothetical case, in order to present the abstract principle of comparative negligence.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. Lorin C. Collins, Judge, presiding.

Mr. B. C. Cook, Mr. W. C. Goudy, and Mr. W. B. Keep, for the appellant:

The negligence of Hart, the deceased, was greater than that of the defendant, and such as to preclude a recovery. The burden of proof was on the plaintiff to show that his intestate was, at the time of the accident, using ordinary care and caution for his own safety. *Railroad Co.* v. *Johnson,* 103 Ill. 512; *Railway Co.* v. *Thorson,* 11 Bradw. 631.

The sixth of defendant's instructions, as asked, states the law correctly. *Railroad Co.* v. *Johnson,* 103 Ill. 512; *Railway Co.* v. *Thorson,* 11 Bradw. 631; *Abend* v. *Railroad Co.* 111 Ill. 203; *Railroad Co.* v. *Lee,* 68 id. 576; *Railway Co.* v. *Moran,* 13 Bradw. 72.

In the modification, by the insertion of the words, "*which is slight,*" the court virtually instructed the jury that the plaintiff's negligence *was* slight. This, even if a clerical error, is sufficient to reverse. *American* v. *Rimfert,* 75 Ill. 228; *Railway Co.* v. *Thorson,* 11 Bradw. 631.

The thirteenth instruction states the law correctly, and should have been given. *Railway Co.* v. *Lee,* 68 Ill. 591; *Railway Co.* v. *Damerell,* 81 id. 453; *Railway Co.* v. *Harwood,* 90 id. 425; *Railway Co.* v. *Austin,* 69 id. 426; *Railway Co.* v. *Krough,* 13 Bradw. 455.

A man in full possession of his faculties, standing in full view of a locomotive engaged in switching cars, is, *prima facie,* guilty of negligence, if he does not see what the locomotive is doing, when he is in a place where he is liable to be injured by it. *Wood* v. *Railway Co.* 52 Mich. 402; *Railroad Co.* v. *Bliss,* 6 Bradw. 418; *Railroad Co.* v. *Simmons,* 110 Ill. 340.

It is always the duty of a person crossing the track of a railroad, to watch for the approach of trains, and a person who is injured on account of his neglect to look and listen for approaching trains, can not recover. *Austin* v. *Railroad Co.* 91 Ill. 35; *Railway Co.* v. *Dimick,* 96 id. 42; *Railway Co.* v. *Robinson,* 9 Bradw. 89.

Mr. Frank N. Grover, Mr. R. N. Freeman, and Mr. C. M. Hardy, for the appellee:

Negligence is a question of fact for the jury. *Pennsylvania Co.* v. *Frana,* 112 Ill. 398; *Meyers* v. *Railroad Co.* 113 id. 386; *Railroad Co.* v. *Bonifield,* 104 id. 223; *Railroad Co.* v. *Pennell,* 94 id. 455.

What is ordinary care, is also a question for the jury. *Pennsylvania Co.* v. *Frana,* 112 Ill. 398; *Kolb* v. *O'Brien,* 86 id. 210; *Schmidt* v. *Railroad Co.* 83 id. 405.

The defendant was, under the circumstances, obliged to give Hart warning, other than the mere ringing of a bell. *Railroad Co.* v. *Hoffman,* 67 Ill. 290; *Mill Co.* v. *Johnson,* 114 id. 63.

The modification of defendant's sixth instruction can not be considered as telling the jury that the plaintiff's negligence was slight. The words, "*which is slight,*" qualify the preceding part of the sentence, in exactly the same manner as the words, "*which is gross,*" do.

Defendant's thirteenth instruction has no application to the facts shown in the record, and was properly refused. Besides, it does not state the law correctly. *Railroad Co.* v. *Johnson,* 103 Ill. 520; *Mill Co.* v. *Johnson,* 114 id. 63; *Morris* v. *Railroad Co.* 45 Iowa, 32; *Lewis* v. *Railroad Co.* 38 Md. 600; *Zimmerman* v. *Railroad Co.* 71 Mo. 484.

A railroad company is bound to use the utmost diligence toward parties lawfully engaged upon the company's grounds, —as, a man loading or unloading freight. 1 Thompson on Negligence, 461; Pierce on Railroads, 275, 276; *Railroad Co.* v. *Hoffman,* 67 Ill. 287; *Mill Co.* v. *Johnson,* 114 id. 63; *Morris* v. *Railroad Co.* 45 Iowa, 31; *Newson* v. *Railroad Co.* 29 N. Y. (2 Tiff.) 383; *Stinson* v. *Railroad Co.* 32 id. (5 Tiff.) 333; *Noble* v. *Cunningham,* 74 Ill. 51.

Mr. Justice Mulkey delivered the opinion of the Court:

John Goebel, as administrator of John J. Hart, deceased, recovered a judgment in the circuit court of Cook county, against the Chicago and Northwestern Railway Company, for the sum of $5000, for negligently causing the death of the intestate, which, on the company's appeal, was affirmed by the Appellate Court for the First District. By the company's further appeal, the case is now here for review.

The accident which resulted in Hart's death occurred November 13, 1883, on a side-track, east of the company's two main lines, at its Evanston yard, near Chicago. The evidence tends to prove that Hart, prior to the accident resulting in his death, was one among a number of teamsters whose daily business was to unload and haul coal and other freight from loaded cars standing on the side-track in question; that such unloading of the cars by teamsters was done for the owners of the freight, and not for the company, but with the company's knowledge and consent, and in pursuance of the due course of business at that yard; that on the day just named, while the deceased was loading his wagon with coal from said side-track, the car upon which he was standing, was, through the negligence of the company, suddenly and violently struck by other cars on the side-track, set in motion by a locomotive engine under the control and direction of the company's servants, causing the deceased to lose his balance and fall between the cars on the track, where he was run over and killed. The evidence also tends to prove that the side-track in question was used chiefly, if not exclusively, for standing loaded cars thereon, for the purpose of having them unloaded by teams; that it was the usual course of business to daily gather up such cars on the track as had been emptied, and place them in a local freight train for removal. While the switching required for this purpose was going on, the unloading of cars was necessarily suspended, for, besides being dangerous, as a general rule all the loaded as well as empty cars would be first pulled out together on another track, and there separated, the empty ones being placed in a train on one of the main tracks, for removal, when the loaded ones would be pushed back upon the side-track from which they had been taken, and would there be shoved, or, as the witnesses have it, "bunched" together, and the brakes set. The engine would then be uncoupled, run back, and placed at the head of the train from which it had been detached. This all

having been done, was understood, as is claimed by appellee, and as we think the evidence tends to prove, as a signal that the switching was over, and that the teamsters might with safety resume the unloading of the cars. It also sufficiently appears that the deceased was familiar with the manner in which the business was done at the yard, having been at work there several months previous,—hence it may be assumed that he well understood the significance of bunching the cars, etc., as above stated. That they were left in such condition on the day of the accident, but a short time before the deceased and the other teamsters resumed their work, is clearly shown.

The second count of the declaration, after setting out, by way of preamble, the custom, as above stated, and showing that the deceased had, in pursuance thereof, resumed the work of unloading said car, expressly charges, that while the deceased was so engaged, and while exercising due care on his part, the defendant, by its agents and servants, wrongfully, negligently, and without any warning or signal, committed the injury of which plaintiff's intestate died, in the manner heretofore stated. The appellant claims, however, that the switching was never regarded as over until the loaded cars were not only "bunched," with brakes set, but also coupled together, and that as they were not coupled on this occasion, the deceased was guilty of such contributory negligence, in resuming his work before this was done, as to prevent a recovery. The evidence clearly shows that the custom in this respect was not uniform,—that while the switching force of the company would sometimes so couple the cars together, they at other times did not do so. The controversy upon this point, however, is not an open question here. It is one of the controverted questions of fact in the case which is conclusively settled against the appellant by the decision of the Appellate Court.

Of the same character is the claim· that the evidence does not sustain either count of the declaration. The facts relied on as constituting negligence were specifically set forth in each count of the declaration, and they were put directly in issue by filing the plea of the general issue, which was also an admission, in law, upon the record, of the sufficiency of the respective counts to which it was pleaded. Evidence was offered and heard in support of both counts, and the Appellate Court has expressly found that the evidence sustains the finding under the second count of the declaration, and that is conclusive upon appellant.

The errors of law relied on for a reversal occupy ·but a small space in the argument. It is not claimed in the briefs that the trial court committed any error in ruling upon questions of evidence.

As to the instructions, none were asked or given for appellee. Under the facts, the course adopted by appellee's counsel, in this respect, was eminently prudent and sagacious, and might, doubtless, in many cases, be followed with profit.

With respect to appellant's instructions, it is claimed the court erred in modifying the sixth, and in refusing the thirteenth. The sixth instruction, as modified by the court, is as follows:

"The jury are instructed, as matter of law, that although a plaintiff who has been guilty of negligence can recover, if the jury believe, from the evidence, that the defendant has been guilty of negligence which is gross in comparison with that of the plaintiff, *which is slight,* yet you are further instructed, as matter of law, that before you can consider the degrees of negligence of which the various parties have been guilty, you must believe, from all the evidence in the case, that the deceased was, at· the time of the accident in question, exercising ordinary care and prudence for his own safety, *and if you believe, from the evidence, that the deceased was guilty of a want of ordinary care, then the plaintiff can not recover.*"

So much of the instruction as appears in italics was inserted by the court, and that is what is complained of. The addition made by the court, which constitutes the chief ground of complaint, is the words, "*which is slight.*" It is said by appellant's counsel, that the court, by the insertion of these words, "virtually instructed the jury that the plaintiff's negligence was slight." As we construe the modification, the court did nothing of the kind. The first part of the instruction, including the words complained of, does not refer to the concrete case made by the evidence then before the jury, but rather to a hypothetical case, for the purpose of presenting the abstract principle, so called, of comparative negligence. Thus, the jury are told that although *a plaintiff who has* been guilty of negligence may recover, etc., it is clear, that by the expression, "a plaintiff," the then plaintiff was not intended. It is also equally clear that by the phrase, "*who has been guilty of negligence,*" it was not intended to assert that the plaintiff in the case then on trial had been guilty of negligence. The words complained of are to be understood and construed in the same way. They were but a part of the hypothetical case, and were added to make it complete as a presentation of the rule of comparative negligence. The added words but express that which would be implied without them, and consequently afford no ground for complaint. So far as the words added at the end of the instruction are concerned, they are clearly favorable to appellant, and it could not therefore have been injured by them.

The thirteenth instruction is as follows :

"The jury are instructed, as matter of law, that even if you believe, from the evidence in this case, that the employes of defendant company, shortly before the accident, saw the deceased upon the cars at the point where the injury occurred, yet, as a matter of law, they had a right to presume that he was a reasonable being, and would not place himself or remain

in a position of danger, until they saw something in his conduct to indicate to the contrary."

This instruction, it is claimed, is sustained by the ruling of this court in *Chicago, Burlington and Quincy Railroad Co. v. Lee*, 68 Ill. 579, and should therefore have been given. The circumstances in this and that case are wholly different, and call for the application of a different principle. It is undoubtedly true, as held in that case, that one crossing a railway is bound to look out for his own safety, and if, failing to do so, he receives an injury which might have been avoided by the exercise of reasonable diligence, he can not recover for such injury. This is, unquestionably, the general rule, applying to all persons crossing railroads, or approaching other places of known danger. The case in hand, however, is unlike one of that kind, in this, that, so far as the second count of the declaration is concerned, the plaintiff's right to recovery is placed upon the express ground, that by reason of the appellant's own course of conduct, appellee was justified in assuming that there was no danger in the deceased resuming his work of unloading the cars. Whether the appellant had so acted in this case as to justify this assumption, was the central point upon which the case turned, and to have given the instruction as asked, would have been virtually taking the case from the jury, which, under the circumstances, would clearly have been erroneous.

The principle here adverted to, and to be applied to this case, might, under certain circumstances, apply as well to the crossing of a railroad as to anything else. Suppose, for instance, a railroad company should adopt the custom of putting up a signal each day, at a particular crossing, to indicate that the last train had passed over the track for that day, and that one, relying on the signal as an assurance there was no danger; should be injured in attempting to cross, such a case would be analogous, in principle, to the one before us,

and would call for like treatment.   No one has the right, by his course of dealing or otherwise, to invite confidence, and lull another into a feeling of security from the consequences of his own acts, and then, when an injury has resulted to him from simply acting upon the confidence thus inspired, to turn round and say, "You should have looked out for yourself, and paid no attention to what I said or did."   When a railroad company puts loaded cars upon a side-track, for the purpose of being unloaded by the owners of the freight, and such owners, their agents or servants, with the express or implied consent of the company, proceed to remove the freight, the company, in such case, has no right, without special notice and warning, to run or back a train in upon the side-track while the cars are being unloaded.   And while, in such case, those engaged in the work of unloading are not permitted to close their eyes or ears to what comes within the range of these senses, yet they may give their undivided attention to their work, and are justified in assuming that the company will not molest them, or render their position hazardous, without such notice or warning.   That such is the law, is well settled by authority. *Rolling Mill Co.* v. *Johnson,* 114 Ill. 57 ; *Railroad Co.* v. *Hoffman,* 67 id. 287 ; *Newson* v. *New York Central Railroad Co.* 29 N. Y. 383 ; *Stinson* v. *Stinson,* 32 id. 333 ; *Noble et al.* v. *Cunningham,* 74 Ill. 51 ; Thompson on Negligence, 461 ; Pierce on Railroads, 275, 276.

Perceiving no error in the record, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*