## Frank M. Block v. Swift & Company.

1. VERDICT—*When Directed for the Defendant.*—If the evidence, with all the inferences which the jury can justifiably draw from it, is legally insufficient to support a verdict for the plaintiff, it is proper for the judge to take the case from the jury by an instruction to find for the defendant.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Submitted at the March term, 1895, of this court. Affirmed. Opinion filed April 22, 1895.

CASE, HOGAN & CASE, attorneys for appellant.

JOHN A. POST, attorney for appellee; SAMUEL S. PAGE, of counsel.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was an action for a personal injury received by the appellant, who was an employe of the appellee, an Illinois corporation, engaged in the business of packing and shipping pork, beef, etc.

At the conclusion of the plaintiff's case, the court instructed the jury to find for the defendant, and a verdict of not guilty was accordingly returned, and judgment was entered upon the verdict.

This appeal calls in question the correctness of that judgment.

The appellant worked twelve weeks for the appellee, before the injury was received, in "trucking hams." The injury he received resulted in the loss of one of his legs by amputation.

In their brief, counsel for appellant have stated the facts as disclosed by the evidence, as follows:

"Appellant was working in the packing house of appellee trucking hams, and in the line of his duty was engaged in

taking up upon a freight elevator, a truck load of hams; the elevator was operated at the time of the accident by a man in charge thereof, who was stationed on the fourth floor, and who pulled a lever to run it; this operator was not on the elevator at all, but remained on the fourth floor, and worked the elevator up and down by the lever on the fourth floor; appellant was in the basement or ground floor, and had just placed his truck of hams on the elevator and got on himself with it, as was his duty, and there was also another man with a truck of hog fat, going up on the elevator; the elevator operator on the fourth floor shouted down to appellant, "Frank, she won't pull;" so appellant and the other man got off and left the door open. The operator called down again, "she won't go yet." Then the elevator went down about six inches below the level of the floor, and then rose again to the level of the ground floor, and then appellant stepped one foot on the elevator again to take hold of his truck and pull it off, so that the load would be lighter, and while he was engaged in doing this, the elevator started right up, flew up before he could get fully on or off, and he was caught between the elevator and the first floor.

The only other witness on the trial was Patrick Davorn, who testified that he was on the third floor at the time, and saw appellant down below when he was getting on the elevator, and saw the elevator immediately start up and injure him. He states that the elevator operator was stationed on the fourth floor and worked the elevator from there; that this operator could see down in the basement, and that he ran the elevator by sight; that the elevator should not be started till the men said "all right," or "pulled the bell."

The only objection made by counsel for appellee to the correctness of the facts so stated, is concerning the concluding portion of the statement. Reference to the abstract shows that in answer to the question of how the signal to start the elevator would be given, the witness said:

"You would close your door and say all right; also there

was a bell there to pull; you would pull your bell three times if you want to go to the third floor, and if you want to go to the first floor, you would pull it once."

It seems to us that upon the facts so shown, the Circuit Court rightly instructed the jury to find for the defendant.

Presumably after the two trucks and the two men had got on board the elevator, the signal by calling "all right," or by ringing the bell had been given to the operator of the elevator, and that the operator had pulled the lever to start the elevator, for he called down to appellant, "she won't pull," "she won't go yet."

Then the appellant and the other man got off, and still the elevator would not rise, but sank down six inches below the level of the floor; then the elevator rose again, and while it was in motion, ascending, appellant voluntarily stepped on the elevator, and it rising quickly, he was caught.

It is not pretended that there was any duty upon the part of the appellant in the performance of his work to get upon the moving elevator, and it is apparent that from the time the elevator began to rise from the level below the floor to which it had sunk, it made no stop until after appellant got upon it and was hurt.

Under such conceded facts, a verdict in the plaintiff's favor must have been set aside.

Where, then, was the need of submitting the case to the jury? It is the duty of a trial judge to determine whether there is or is not evidence legally tending to prove the fact or facts affirmed.

If the evidence with all the inferences which the jury can justifiably draw from it is legally insufficient to support a verdict for the plaintiff, or in other words, if such verdict would have to be set aside, if returned, it is proper for the judge to take the case from the jury by an instruction to find for the defendant. Wenona Coal Co. v. Holmquist, 152 Ill. 581.

Granting that, as alleged in the declaration, the operator of the elevator was not a fellow-servant of the plaintiff, the

evidence shows that the plaintiff carelessly contributed to the injury, and the jury should have found exactly as they were instructed by the court to find.

There was no error committed and the judgment is affirmed.